BEFORE THE SECOND DIVISION, MAY 5, 1965

No. 69288.—C. J. Tower & Sons of Buffalo, Inc. v. United States, protests 61/8665 and 61/8666 (Buffalo).

FORD, Judge:  The above protests consolidated for the purpose of trial involve the classification of certain battery blocks which were classified by the collector of customs under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as parts of batteries, and assessed with duty at the rate of 17½ per centum ad valorem.

Plaintiff's main contention is that the imported battery parts are entitled to entry free of duty, under the provisions of paragraph 1604 of the Tariff Act of 1930, as parts of agricultural implements.  It is alternatively claimed that said merchandise should properly have been classified under the provisions of paragraph 353 of said act, as modified, supra, as parts of transformers and, as such, subject to duty at the rate of 12½ per centum ad valorem.

The pertinent portions of the statutes involved herein read as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, supra:

Articles having as an essential feature an electrical element
  or device, such as electric motors, fans, locomotives, portable
  tools, furnaces, heaters, ovens, ranges, washing machines,
  refrigerators, and signs, finished or unfinished, wholly or in
  chief value of metal, and not specially provided for:
  Batteries _____ 17½%   ad   val.

  *          *          *          *          *          *          *

Parts, finished or unfinished, wholly or in chief value of metal, The same rate of
  not specially provided for, of articles provided for in any item    duty as the ar-
  353 of this Part (not including X-ray tubes or parts    ticles of which
  thereof) _____    they are parts.

Paragraph 1604 of the Tariff Act of 1930:

Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: Provided, That no article specified by name in Title I shall be free of duty under this paragraph.

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

| | |
|---|---|
| Transformers | 12½% ad val. |

\* \* \* \* \* \* \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for in any item 353 of this Part (not including X-ray tubes or parts thereof) _____ The same rate of duty as the articles of which they are parts.

The record in this case consists of the testimony of four witnesses called on behalf of plaintiff and the receipt in evidence of seven exhibits offered by plaintiff. Plaintiff's exhibit 1 consists of a sample of the imported block; plaintiff's illustrative exhibit 2 represents the finished battery; plaintiff's illustrative exhibit 3 is an advertisement for an electric fencer; plaintiff's collective exhibit 4 is a list of purchasers for the year 1959 of the "Hot Shot batteries"; plaintiff's illustrative exhibit 5 represents an advertisement; and plaintiff's illustrative exhibits 6 and 7 are completed batteries.

The testimony herein establishes that the imported blocks are used for the completion of certain 6-volt batteries which, because of their size and ingredients, afford long service and shelf life. It is also clear from the witnesses that a large portion of these batteries is used in connection with electric fencers. An electric fencer amplifies the 6 volts to a higher voltage which is sent through wires strung on posts surrounding farms. The high voltage is sent through these wires at intervals and is used for the purpose of shocking any animal which may come in contact with it. The record also establishes that batteries of this type are used to a lesser extent for ignition systems of internal-combustion engines, power for blinker light safety devices, fluorescent lights, and for black light use.

Whether or not electric fencers are agricultural implements or act as transformers is immaterial until the issue of the applicability of the parts provision of the paragraphs claimed by plaintiff is first determined.

The question of what constitutes "parts" for tariff purposes has been the subject of much litigation. Whether a given article constitutes a part of another article depends upon the nature, the function, and purpose of the item, as well as its relation to the article to which it attaches or with which it is designed to serve. *Gallagher & Ascher Company* v. *United States*, 52 CCPA —, C.A.D. 849.

There appears to be no dispute as to the use of and manner of operation of electric fencers. The evidence adduced herein establishes without contradiction that electric fencers are used around farms to charge a single-wire fence which will cause a shock to any animal which comes in contact with it. In order to accomplish this function, the 6 volts supplied by the battery are increased and, therefore, in effect, electric fencers act in the same manner as transformers.

In a recent decision of the appellate court, *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831, the question of "parts" and the application of the "dedication test" were reviewed. The merchandise involved therein was certain parts for internal-combustion engines manufactured by the Ford Motor Company which were used to assemble completed engines. The completed engines were used in "industrial settings" as well as in "automobiles." The court, in sustaining the decision below, based upon the record, held the parts in issue

to be essential parts of internal-combustion engines which were not dedicated solely for use in the automotive field.

In the case of the superchargers involved in *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602, the court sustained the claim for parts of automobiles and distinguished the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851, commenting as follows:

* * * At the time of importation these superchargers, as the undisputed evidence clearly shows, are dedicated irrevocably for use upon automobiles. Such being the fact, it is unrealistic to attempt to determine the nature of the superchargers apart from their undisputed ultimate use. The *Willoughby* case upon which the Government relies so heavily did not turn upon the fact that the cameras were not designed to operate with tripods. As a matter of fact the court indicates at 21 C.C.P.A. (Customs) 323 that the cameras had "sockets" designed to receive the tripods. The court considered, rather, the function performed by the tripod when applied to its ultimate use, and concluded that in that use it was not a part of a camera. As we understand the *Willoughby* case, it would have made no difference in the result even if the tripods had been imported in physical attachment to the camera. Appellee is correct in his argument that the facts of the *Willoughy* case are different from those presented here.

The appellate court, in the case of *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758, held certain mounting brackets for door closers to be part of the door closers, particularly since the record showed that they had but one commercial use, i.e., the mounting of a particular door closer on a door frame.

These recent cases all have the theory of "dedication" as a decisive factor in their determination. The record herein establishes that while a major portion of the involved batteries is used for electric fencers, there were other uses which were indicated by the various witnesses, such as warning signal blinker lights, for the ignition of certain internal-combustion engines, for black lights, for boating, and for fluorescent lights.

While these uses may not be as substantial as the use for electric fencers, their use, in our opinion, based upon the record, is not fugitive. Accordingly, we are of the opinion that the imported battery parts are not dedicated to any one particular use and are, therefore, not parts of electric fencers.

With respect to the alternative claim of plaintiff that said merchandise is parts of transformers, the reasoning and principles applying to agricultural implements are likewise applicable to said alternative claim.

The protests are, therefore, overruled. Judgment will be entered accordingly.